UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES MILLER, ET AL                    CIVIL ACTION NO. 13-cv-2658

VERSUS                                 JUDGE DOHERTY

AMERICAN STRATEGIC INS. CO.            MAGISTRATE JUDGE HANNA

## Report and Recommendations

Currently pending before the Court is the Rule 12(b)(6) Motion to Dismiss by Liggio InsuranceAgency [Rec. Doc. 33].  The motion is opposed by the plaintiffs [Rec. Doc. 37].  Oral argument was heard on the motion on May 26, 2015.  After considering the arguments and memoranda of the parties, and for the following reasons, it is the recommended that the motion be granted.

### *Factual and Procedural Background:*

In the original complaint filed September 13, 2013, the plaintiffs alleged that their home was damaged as a result of heavy rains and general flooding conditions in the Carencro, Louisiana area on March 12, 2012. [Rec. Doc. 1].  At the time of the incident, the plaintiffs were insured under a flood insurance policy issued by Defendant American Strategic Insurance Corporation[ASI], a Write-Your-Own Program participant in the federal government's National Flood Insurance Program (NFIP). The policy [FLD136771] was in effect from June 10, 2011 through June 10,

2012.

According to the complaint, while flood waters did not enter the Miller home over its threshold, the Millers were concerned about possible damage they could not see, and they contacted their insurance agent at Liggio Insurance Agency, where they had purchased the flood insurance policy.  They allege that the Liggio representative assured them they had not experienced a "flood event." [Rec. Doc. 1, ¶5].

In June, 2012, Mrs. Miller stepped through the floor of her home, seeing actual damage which Plaintiffs related to the flooding in March, 2012 and the apparent encroachment of flood waters under their home.  They again contacted the Liggio agency and were advised that foundation problems were not covered in their policy.[Rec. Doc. 1,  ¶6].  The Millers hired repairmen to address the floor problem, and they discovered wet floor joists and damaged plywood, which prompted them to instigate a flood damage claim. [Rec. Doc. 1,  ¶7].  In response, the carrier sent an adjuster to inspect the property and prepare a proof of loss for the Millers' signature. The document was sufficient for recovery of compensation for general post-flood cleaning, but the Millers allege they were not compensated for the damage to their flooring and home. [Rec, Doc. 1,  ¶8].

By September 13, 2012, the Millers were informed by the flood insurer that it was closing their  claim for failure to provide adequate proof of loss.  By October 31,

2012, the Millers submitted another proof of loss of their own making, swearing to its accuracy, for total losses of $92,442.02.  By November 28, 2012, the flood insurer acknowledged in writing the receipt of the proofs of loss and reiterated that "clean up and dry out" were the extent of covered losses.   The Millers appealed the decision, but by March 13, 2013, the Director of Claims for the National Flood Insurance Program upheld the flood insurer's determination.   In the Complaint, Plaintiffs asserted their home was partially damaged from the rising water and flooding after the March, 2012 storm and was damaged further as a consequence of the flood insurer's poor handling of their claim, which they contend constitutes bad faith.

The lawsuit was answered by American Strategic Insurance Corporation[ASI]. [Rec. Doc. 3].  ASI admitted that it issued the Millers' flood insurance policy for the period alleged.  ASI also admitted the communications had with the Millers regarding their claimed loss.  However, ASI asserted that Plaintiffs have no rights of recovery from the defendant under federal law beyond what is provided for in the text of the policy.

On  December 2, 2014, Plaintiffs filed the Motion to Amend/Correct the Complaint [Rec. Doc. 13], seeking to add Liggio Insurance Agency, Inc. as an additional defendant.  The motion was opposed by ASI, but it was granted January 29, 2015, and the Amended Complaint was entered into the record the same date.

[Rec. Docs. 24-25].  Plaintiffs alleged in the amended pleading that "as instructed by their flood policy documentation," they advised Liggio of the flood waters which had stopped just before entering their threshold.  Liggio  representatives are alleged to have responded by telling the Millers they "had not experienced a flood event." [Rec. Doc. 25, ¶5].  When Mrs. Miller later called the Liggio agency to report the discovery of floor damage in the home, she was advised that the policy did not cover foundation problems. [Rec. Doc. 25, ¶6].

The Millers allege they learned for the first time on or about September 3, 2014 that ASI took the position that their flood claim was untimely.  Prior to that date, they allege ASI had noted that their claim had been filed outside the normal time limits, but the insurer had nevertheless offered money to pay the claim. [Rec. Doc. 25, ¶26]. They allege they consulted with Liggio personnel on numerous occasions "beginning immediately after the flood" to determine whether they needed to make a claim on the flood insurance policy, and "[r]elying on Liggio, however, the Millers waited and did not initiate a flood claim within normal time limits." [Rec. Doc. 25, ¶26]. Accordingly, if their flood claim is deemed to be untimely by the Court, then it is untimely due to their agent's negligence. [Rec. Doc. 25,  ¶26].

In the motion before the court, Liggio characterizes the claims made in the amending complaint as insurance agency liability claims governed by provisions of

-4-

La. R.S. 9:5606, requiring that actions against insurance agents must be brought "within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. R.S. 9:5606(A).  According to Liggio, the alleged act, omission, or neglect is that Liggio made certain misrepresentations to the plaintiffs that caused them to delay reporting a flood claim to their insurance carrier, which was one of the reasons the insurance carrier denied coverage on the claim. Because that claim was made more than one year after the plaintiffs knew or should have known of their insurance agent's act, omission or neglect, Liggio argues the claim against it is perempted.

## Applicable Law and Discussion:

### The Rule 12(b) Standard:

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161(5th Cir. 2001).  When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litigation*, 495 F.3d

191, 205(5th Cir. 2007)(internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467(5th Cir. 2004). Conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 U.S. at 570.  The plaintiff's obligation is "to provide the 'grounds' of his 'entitle[ment] to relief' [and] requires more than labels and conclusions." *Id.,* at 555. The allegations must be sufficient to "raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts which create merely a suspicion of a legally cognizable right of action.  *Id.*  While detailed factual allegations are not required, the plaintiff's obligation is to provide the grounds of his entitlement to relief, using more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do[.]" *Id.*   If the plaintiff fails to allege facts sufficient to "nudge[][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.,* at 570.

The Fifth Circuit explained the *Twombly* plausibility standard of pleading succinctly, as applied to Fed. R. Civ. P. 8(a)(2):

> The complaint(1) on its face (2) must contain enough factual matter(taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.  "Asking for [such] plausible grounds to infer [the element of the claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257(5th Cir. 2009), quoting *Twombly*, 550 U.S. at 556.

Thus, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled.  Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow the court to reasonably infer that the defendant is liable for the misconduct alleged.

### *Claims againt Insurance Agents and the Peremption Defense:*

Insurance agents have a duty to supply their customers with correct information, and they may be liable for negligent misrepresentation when they provide incorrect information and an insured is thereby damaged. *Venture Associates Inc. of La.,* 634 So.2d 4, 6-7(La. Ct. App. 1994).  Louisiana recognizes actions against insurance agents for negligent misrepresentation leading to pecuniary loss when (1) the

defendant owed a duty to supply correct information, (2) the defendant breached that duty, and (3) the plaintiff suffered damages resulting from justifiable reliance on the misrepresentation. *Abbott v. Equity Group., Inc*., 2 F.3d 613, 624 n. 38(5th Cir. 1993); *Devore v. Hobart Mfg. Co.*, 367 So.2d 836, 839(La. 1979).

La. R.S. 9:5606(A) sets out the time limitations for an action for damages against an insurance agent:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue **within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered**. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect. (Emphasis added).

The limitations periods  referenced in §5606(A) are peremptive periods and may not be renounced, interrupted, or suspended. La. R.S. 9:5606(D).

A prescriptive or peremptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle him to bring a suit. *Campo v. Correa*, 828 So.2d 502, 510(La. 2002).  Information or knowledge that ought to excite attention and put the alleged victim on guard is sufficient to start the running of prescription. *Id.,* at 510.  Knowledge of policy terms that directly

contradict a statement by the agent who sold the policy is sufficient to excite

attention and put the insured on guard. *See Dobson v. Allstate Ins. Co.*, 2006 WL

2078423, at *9 (E.D. La. July 21, 2006).

      The original and amended complaints in this matter establish the following

facts, which the court accepts as true for the purpose of this motion:

> a.  The Millers purchased a policy of flood insurance for their residence prior to the policy effective date of June 10, 2011. [Rec. Doc. 1, ¶¶3-4].

> b.  On March 12, 2012, there was widespread flooding in the area of the Millers' home, with flood waters entering beneath the home. Waters did not cross the threshold of the home.  "As instructed by their flood policy documentation," the Millers advised their insurance agent of those events at the time, and they were told they had not experienced a flood event. [Rec. Doc. 1, ¶5; Rec. Doc. 25, ¶5].

> c.  In June, 2012, the Millers reported actual damage to the floor of their home to their insurance agent, which damage they associated with the flood event.  The agent advised that foundation problems were not covered by their policy. [Rec. Doc. 1, ¶6; Rec. Doc. 25, ¶6].

> d.  The Millers instigated a flood damage claim before September 13, 2012. Also before that date, an insurance adjuster inspected the property and prepared a proof of loss for the Millers' signature. [Rec. Doc. 1, ¶8].  They admit they did not initiate a flood claim within normal time limits. [Rec. Doc. 25, ¶26].

> e.  By September 13, 2012, the flood insurer notified the Millers that it was closing their claim for failure to provide a proof of loss. [Rec. Doc. 1, ¶9].

> f.  By October 31, 2012, the Millers provided their own proof of loss

to the insurer, for total losses of $92,442.02. [Rec. Doc. 1, ¶10].

g.  By November 28, 2012, the flood insurer again denied coverage on the claim, advising the Millers of their appeal rights. [Rec. Doc. 1, ¶11].

h.  The Millers appealed before March 13, 2013, but **by March 13, 2013**,the Director of Claims for the NFIP upheld the insurer's determination that the Millers had sustained a non-covered loss or damage. [Rec. Doc. 1, ¶12]. (Emphasis added).

i.  On September 13, 2013, the Millers filed the instant suit against the flood insurer. [Rec. Doc. 1].

j.  September 3, 2014 is alleged by the Millers to be the first date that the insurer defendant indicated its position that the Millers' flood claim is untimely, which untimeliness "is dispositive to the claim." [Rec. Doc. 25, ¶26].  The Millers acknowledge having been notified earlier that their claim was filed outside normal time limits. [Rec. Doc. 25, ¶26].

k.  The amending complaint naming Liggio as a defendant was not filed until January 29, 2015.

From the pleadings filed by Plaintiffs, it is reasonable to infer that the

Millers had reviewed their "flood policy documentation" before June, 2012.  [Rec.

Doc. 1, ¶5; Rec. Doc. 25, ¶5].  Thus, the Millers knew or should have known of

the policy provisions as of June, 2012.  By that date, the Millers believed their

home had sustained damage from the March, 2012 flood event, and as of that date,

they had heard from their agent that the damages they described were not

considered by him to be a flood event or covered by the policy. [Rec. Doc. 1, ¶¶5-

6; Rec. Doc. 25, ¶¶5-6].

The Millers instigated a flood damage claim before September 13, 2012**,** which they admit was not within normal time limits.[Rec. Doc. 1, ¶8; Rec. Doc. 25, ¶26].  Thus any act/omission by the insurance agent relative to the timeliness of claim submission had occurred by September, 2012.  As of  September 13, 2012, when the flood insurer notified the Millers that it was closing their claim for failure to provide a proof of loss, the Millers had discovered, or should have discovered the timeliness problem.  Whatever act/omission by their agent relative to timely submission of a claim (which is not described by Plaintiffs beyond what appears in the pleadings) had already occurred.  By that date, the Millers had sufficient notice "to excite attention and put the owner on his guard and call for inquiry," which is tantamount to knowledge/notice of everything to which inquiry may lead. *Campo*, 828 So.2d at 510.  They filed the instant suit one year later, but they did not name their insurance agent as a defendant. [Rec. Doc. 1, ¶9].

Giving the Millers the benefit of every doubt, and assuming they did not come to the realization of the problems related to their flood damage claims in 2012, they certainly knew or should have known of the problems by March 13, 2013, when the Director of Claims for the NFIP upheld the insurer's determination that the Millers had sustained a non-covered loss or damage.

Finally, as of the date of the Millers' filing of the original complaint herein, on September 13, 2013, they were articulating in the complaint details of the actions/inactions by their insurance agent sufficient to indicate to  reasonable persons that they could/should state a cause of action against their agent.  Even using that date to trigger the one year peremptive  period under La. R.S. 9:5606(A) does not help the Millers, however, since the amending complaint naming Liggio as a defendant was not filed until January 29, 2015, and based on peremption principles, it cannot relate back to the filing of the original complaint. *See Naghi v. Brener*, 17 So.3d 919, 926 (La. 2009) (Relation back of a petition adding a new plaintiff is not permitted where the time period involved is peremptive.)

To the extent Plaintiffs may attempt to argue their agent's malpractice for failing to secure proper coverage in the flood insurance policy, which they have not, under provisions of La. R.S. 9:5606(A) set out above, that claim would be perempted by the passage of three years from the date coverage was obtained in 2011. *Dobson v. Allstate Ins. Co.*, 2006 WL 2078423, at *6 (E.D. La. July 21, 2006), citing to *Reeder v. North*, 701 So.2d 1291, 1297(La. 1970).

Therefore, the plaintiffs have failed to state a claim for which releif can be granted against Liggio, and the complaint against Liggio should be dismissed with prejudice.

*Recommendation*

After a detailed review of the pleadings, the applicable law and the arguments of the parties, and for the reasons articulated herein, it is the finding of the undersigned that Plaintiffs have failed to state a legally cognizable claim against the  defendant Liggio Insurance Agency which is plausible on the face of the pleadings, and it is recommended that the Rule 12(b)(6) Motion to Dismiss by Liggio InsuranceAgency [Rec. Doc. 33] be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*,

-13-

79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana this 15th day of June, 2015.

_____

Patrick J. Hanna
United States Magistrate Judge

COPY SENT:

DATE: ___6/15/2015_____
BY: _____EFA_____
TO: _____RFD_____
            cg

-14-